**Matter of the Petition of Jean Andre PARIS, Petitioner,**

v.

**Edward J. SHAUGHNESSY, as New York District Director of the United States Immigration and Naturalization Service, Respondent.**

United States District Court
S. D. New York.
Feb. 14, 1956.

Abraham Kaufman and William H. Coogan, New York City, for petitioner.

Paul W. Williams, U. S. Atty., Harold J. Raby, Asst. U. S. Atty., New York City, of counsel, Roy Babitt, Attorney in Office of District Director of Immigration and Naturalization Service of United States, Department of Justice, New York City, of counsel, for respondent.

DAWSON, District Judge.

This case presents for decision cross-motions for summary judgment going to the merits of an alien's petition for a declaration of the invalidity of a deportation order and an injunction against its enforcement.

The papers raise the issue as to whether a person who was legally admitted to this Country for permanent residence prior to the passage of the Immigration and Nationality Act of 1952[1] and thereafter applied for exemption from the draft, and thereby became ineligible for citizenship, and later left the United States and entered it after the passage of the Immigration and Nationality Act of 1952, is now deportable on the ground that at the time of his later entry, he was a person ineligible for citizenship and, therefore, should have been excluded.

The Facts

The following facts appear to exist without substantial controversy:

The petitioner, a native of France, 27 years of age, arrived in this Country as a quota immigrant for permanent residence on October 24, 1950.

On or about March 16, 1951, petitioner registered for the draft with Local Board 13 in the City of New York. Thereafter, he applied at the Office of the Immigration and Naturalization Service for a re-entry permit, and he was advised that he would not be issued a re-entry permit without first obtaining from his local draft board a permit to depart from the United States. He applied to his local draft board for such a permit and was advised that the only way he could obtain it was to file an application as an alien for exemption from military service. Petitioner contends that he wished the re-entry permit so that he could return to France to visit his father who was ill at the time and was expected to die. Petitioner executed SSS Form 130, "Application By Alien For Relief From Training And Service In The Armed Forces." The application had on it the following statement: "I have read the Notice given below, and I understand that I will forever lose my right to become a citizen of the United States, and I may also be prohibited from entry into the United States or its territories or possessions as a result of filing this application." The application was filed on April 17, 1951. On the same day, he was classified in Class IV-C by his local draft board and was issued the permit to depart. The next day he was issued a re-entry permit by the Immigration and Naturalization Service. He thereupon left the United States.

Petitioner returned to the United States on or about April 7, 1952. He next left the United States on August 15, 1953, for a trip to France, having received a re-entry permit from the Immigration and Naturalization Service. He re-entered the United States on or about September 15, 1953. The Immigration and Nationality Act of 1952 became effective on December 24, 1952.

Petitioner, on February 23, 1955, was served with a warrant of arrest in deportation proceedings. On May 10, 1955, an order was entered by the Special Inquiry Officer granting petitioner voluntary departure in lieu of deportation, but holding that he was deportable under the provisions of § 212(a) (22) of the Immigration and Nationality Act on the ground that at the time of his last entry in the United States, he was within one or more classes of aliens not eligible for entry, to wit: aliens who were ineligible to citizenship. An appeal was taken to

1. 66 Stat. 163, 8 U.S.C.A. § 1101 et seq.

the Board of Immigration Appeals, and on September 28, 1955, the Board dismissed the appeal. A final order was entered on November 7, 1955, directing him to arrange to depart from the United States on or before December 9, 1955, and directing that should he fail to avail himself of voluntary departure, he should surrender on or before December 12, 1955, in complete readiness for deportation.

Petitioner is married to a United States citizen. He has no children. He is employed as a jewelry designer at a salary of approximately $20,000 a year.

There appears to be no dispute that petitioner signed the application for exemption from military service voluntarily and with full knowledge that it would make him ineligible to citizenship in the United States. There is also no dispute that petitioner sought the privilege of immigration into the United States and thereafter used his alien status as a recourse for escaping military duty and now seeks to preserve a right to remain in the United States and to enter and reenter the United States in the same manner as though he had not refused to perform military service.

### The Law

The law is clear that a person who secured exemption from service in the military forces by execution of SSS Form 130 became permanently debarred from becoming a citizen of the United States.[2]

There can also be no dispute that under the provisions of the Immigration and Nationality Act of 1952, a person who was not eligible for citizenship is not admissible into the United States as an immigrant for permanent residence.[3]

The Act further provides that an alien who is in the United States may be deported if he was, at the time of his entry, within one or more classes of aliens excludable by the law existing at the time of such entry.[4]

Under the Act which was in effect at the time of petitioner's entry into the United States, and which preceded the Immigration and Nationality Act of 1952, petitioner had the status of a "nonquota immigrant", which is defined as "An immigrant previously lawfully admitted to the United States, who is returning from a temporary visit abroad".[5] However, that Act provided specifically in § 13(c), 8 U.S.C. § 213(c), "No alien

---

2. § 4(a) of the Selective Service Act of 1948, 62 Stat. 605, 50 U.S.C.A.Appendix, § 454(a):

"Any citizen of a foreign country, who is not deferrable or exempt from training and service under the provisions of this title (other than this subsection), shall be relieved from liability for training and service under this title if, prior to his induction into the armed forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President; but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States."

3. § 212(a) (22), 8 U.S.C.A. § 1182(a) (22):

"Sec. 212(a) Except as otherwise provided in this Act, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

\* \* \* \* \* \*

"(22) Aliens who are ineligible to citizenship, except aliens seeking to enter as nonimmigrants; or persons who have departed from or who have remained outside the United States to avoid or evade training or service in the armed forces in time of war or a period declared by the President to be a national emergency, except aliens who were at the time of such departure nonimmigrant aliens and who seek to reenter the United States as nonimmigrants".

4. § 241(a) (1), 8 U.S.C.A. § 1251(a) (1):

"Sec. 241. (a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

"(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry".

5. § 4(b), 8 U.S.C.A. § 204(b) of the Immigration Act of 1924, as amended, 43 Stat. 155, 8 U.S.C. § 201 et seq., now § 1101(a) (27) (B).

ineligible to citizenship shall be admitted to the United States unless such alien (1) is admissible as a nonquota immigrant under the provisions of subdivision (b) * * * of section 4 * * *." Therefore, at the time of petitioner's original admission into the United States and of his execution of SSS Form 130, the mere fact that he was ineligible to citizenship would not have prevented him leaving the United States and returning as a non-quota immigrant under the law then in effect.

The 1952 Act, however, which was in effect at the time of his latest entry into the United States, has no such provision and specifically provides that among the classes of aliens who shall be ineligible to receive visas and who shall be excluded from admission into the United States are "Aliens who are ineligible to citizenship, except aliens seeking to enter as nonimmigrants".[6]

■ When petitioner returned to the United States in 1953, he did not return as a "non-immigrant". See definition of "immigrant", § 101(a) (15) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101(a) (15).

Petitioner has the same status (a non-quota immigrant)[7] under the 1952 Act as he had under the preceding Act, but the prior Act attached to this status a right not provided in the 1952 Act, i. e., the right of such person who had been admitted for permanent residence to thereafter leave and re-enter the Country regardless of eligibility to citizenship.

It is the contention of petitioner that prior to the passage of the 1952 Act, he had the status of a non-quota immigrant and the right to leave and re-enter the United States, even though ineligible to citizenship, and that this right was preserved by the savings clause of the 1952 Act.[8]

The question here presented—which is a novel one, so far as I can ascertain—is whether the savings clause of the 1952 Act preserved to a person who had been admitted for permanent residence under the previous Act the right to leave and re-enter, irrespective of his qualification for citizenship, because the previous Act gave him that right, and whether this right was preserved even though his re-entry occurred at the time when the 1952 Act was effective, which specifically prohibited the entry of such an alien.

That the alien had the status under the previous Act of a non-quota immigrant is undoubted. The fact that he took a step which debarred him from citizenship did not at that time make him subject to deportation, for his status as an alien admitted for permanent residence remained unimpaired, despite the passage of the 1952 Act. However, did that status carry with it the right to leave and re-enter the Country at the time when the 1952 Act was in effect,

6. § 212(a) (22), 8 U.S.C.A. § 1182(a) (22)—quoted supra at Footnote 3.

7. § 101(a) (27) (B), 8 U.S.C.A. § 1101 (a) (27) (B):
"Section 101. (a) As used in this Act—
* * * * * *
"(27) The term 'nonquota immigrant' means—
* * * * * *
"(B) an immigrant, lawfully admitted for permanent residence, who is returning from a temporary visit abroad".

8. § 405(a), 8 U.S.C.A. § 1101 note:
"Sec. 405. (a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes, conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect."

when the precise language of that Act prohibited the entry of an immigrant who was ineligible for citizenship?

Under early immigration acts, it was held that the provisions for exclusion and deportation of aliens were confined to "alien immigrants" and that this term did not include alien residents returning after a temporary absence from the Country. See Lapina v. Williams, 1914, 232 U.S. 78, 86, 34 S.Ct. 196, 58 L.Ed. 515. However, after the passage of the Act of March 3, 1903, 32 Stat. 1213, the Supreme Court in the Lapina case held that an alien resident who left the Country for a few months and then re-entered and resumed the occupation of prostitute could be deported on the ground that she had practiced prostitution within three years after the time of her entry into the Country. The Court held that the deportation and exclusion provisions applied to aliens "irrespective of any qualification arising out of a previous residence or domicil in this country", 232 U. S. at page 91, 34 S.Ct. at page 200.

In Shaughnessy v. United States ex rel. Mezei, 1953, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956, the Court held that—

"For purposes of the immigration laws, moreover, the legal incidents of an alien's entry remain unaltered whether he has been here once before or not. He is an entering alien just the same, and may be excluded if unqualified for admission under existing immigration laws." 345 U.S. at page 213, 73 S. Ct. at page 630.

Numerous cases under the preceding Acts have reached the same result.[9]

It has been urged that the 1952 Act should be amended so as to provide that a resident alien who leaves and re-enters the Country on a temporary trip should not be deprived of his right to re-entry unless he had committed some act or offense which would have made him deportable whether or not he had left the Country.[10]

■ The statute now in effect provides that an alien may be deported if he was "at the time of entry" within one or more of the classes of aliens "excludable by the law existing at the time of such entry".[11] The law, therefore, specifically provides that the right of the alien to remain in this Country depends upon whether he was at the time of his "entry" excludable by the law existing at the time of such entry. "Entry" is defined as "any coming of an alien into the United States, from a foreign port or place or from an outlying possession."[12]

■ Therefore, the right of petitioner to enter the United States in 1953 was to be determined by the law existing at the time of that entry; and the law at the time of that entry was that aliens who were ineligible to citizenship "shall be excluded from admission into the United States". Nor does the fact that

9. U. S. ex rel. Polymeris v. Trudell, 1932, 284 U.S. 279, 52 S.Ct. 143, 76 L.Ed. 291; Hansen v. Haff, 1934, 291 U.S. 559, 54 S.Ct. 494, 78 L.Ed. 968; U. S. ex rel. Volpe v. Smith, 1933, 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298; Zurbrick v. Woodhead, 6 Cir., 1937, 90 F.2d 991; U. S. ex rel. Pappageanakis v. Shaughnessy, D.C.S.D.N.Y.1953, 114 F.Supp. 371; U. S. ex rel. Circella v. Sahli, 7 Cir., 1954, 216 F.2d 33, certiorari denied 1955, 348 U.S. 964, 75 S.Ct. 525, 99 L.Ed. 752; Schoeps v. Carmichael, 9 Cir., 1949, 177 F.2d 391, certiorari denied 1950, 339 U.S. 914, 70 S.Ct. 566, 94 L.Ed. 1340; Zacharias v. McGrath, D.C.D.C.1952, 105 F.Supp. 421; Ex parte Saadi, 9 Cir.,

1928, 26 F.2d 458, certiorari denied 1928, 278 U.S. 616, 49 S.Ct. 21, 73 L.Ed. 540.

10. See "Whom We Shall Welcome", Report of the President's Commission on Immigration and Nationality, pp. 179, 180 (Government Printing Office, 1953); "The Returning Resident Alien", 10 N.Y. U. Intramural L.Rev. 271 (1955).

11. § 241(a) (1), Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1251(a) (1).

12. § 101(a) (13), Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101 (a) (13). See U. S. ex rel. Belfrage v. Kenton, 2 Cir., 1955, 224 F.2d 803.

petitioner presented at that time a duly issued re-entry permit change this situation.[13]

■■ The savings clause, by its very terms, does not continue a right to enter and re-enter the Country, irrespective of a change in the law, for it is not one of the categories specifically referred to in the savings clause.[14] The language of the savings clause clearly indicates that all that is preserved by that clause are inchoate rights in the process of determination or acquisition. It would stretch the language of that clause beyond any reasonable construction to conclude that it means that a person who was entitled to be admitted under a preceding act continues to have that right under subsequent acts, merely because he had once been admitted to the United States, and even though the statute had specifically been amended to deprive him of that right of re-admittance.[15]

■ I must conclude that petitioner, at the time that he re-entered the United States on September 15, 1953, was not a person entitled to admission since he was ineligible for citizenship and that, under the circumstances, this Court has no power to restrain the Immigration Service from deporting him.

Petitioner has urged that he was put in Class IV-C (exempt alien) illegally and, therefore, cannot be held to have been relieved from the draft on the ground of alienage. The petitioner urges that Executive Order Jan. 16, 1951, No. 10202, amending 32 C.F.R. § 1623.2, U.S.Code Cong. and Adm.Service 1951, p. 966, provided that: "The registrant shall be classified in the lowest class for which he is determined to be eligible". He contends that Class IV-F (physically unfit) is lower than Class IV-C and that the regulations therefore required the local board to consider whether he was deferable as IV-F before classifying him in IV-C; and that not having been given a physical examination, the board was in error in classifying him in IV-C when a physical examination might have disclosed that he could been classified in IV-F. There is not much to this argument.

§ 315(b) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1426 (b), provides that—

"The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

■ If any exception could be made by the Courts to this provision, certainly none should be made in a case such as this where the alien failed to appeal from his classification to the Appeal Board and acquiesced in it until the present

---

13. §§ 221(h), 223(e), Immigration and Nationality Act of 1952, 8 U.S.C.A. §§ 1201 (h), 1203(e).

14. The categories referred to in the savings clause, § 405(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101 note, so far as applicable to this proceeding, are defined as "any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect".

15. Furthermore, there is some indication in the Act itself that Congress specifically intended § 212(a) (22), supra at footnote 3, to apply to aliens who, like the petitioner, resided here and applied for exemption from the draft pursuant to § 4(a) of the Selective Service Act of 1948, supra, at footnote 2, before December 24, 1952. This indication is in § 101(a) (19), 8 U.S.C.A. § 1101(a) (19), defining the term "'ineligible to citizenship'" as including "an individual who is, or was at any time, permanently debarred from becoming a citizen of the United States under section 3(a) of the Selective Training and Service Act of 1940, as amended (54 Stat. 885; 55 Stat. 844), or under section 4(a) of the Selective Service Act of 1948, as amended (62 Stat. 605; 65 Stat. 76) * * *." Note also the "unless otherwise specifically provided" provision of § 405(a), the savings clause.

proceeding began. Certainly, if he had been interested in preserving his right to apply for American citizenship, he would have urged his present argument at the time of his classification. Respondent urges that the provision requiring a registrant to be classified in the lowest class for which he is determined to be eligible comes into operation only when a registrant himself furnishes information to the draft board that indicates more than one ground of exemption or deferment may be proper. This is certainly a reasonable interpretation. To decide otherwise would have required the board to consider whether the registrant who applied for a IV-C classification was classifiable in any of the other classifications before granting his application, even though he had never asked for any such other classification and even though he had answered his classification questionnaire on March 22, 1951, as follows:

"1. Do you have any physical or mental condition which, in your opinion, will disqualify you from service in the Armed Forces? Yes [ ] No [x]"

Furthermore, the mere filing by the alien of the Application for Relief from Military Service, irrespective of whether that Application did result in relieving him from military service, may, in and of itself, debar him from citizenship.[16]

It may appear to be a harsh determination that this alien is now subject to deportation. The determination must, however, be reached, irrespective of its harshness, by applying the principles of law applicable thereto. The Court must confess, however, that he is not inclined to extend sympathy to this young man who sought the opportunities of this Country, including the financial rewards that could be made therein, but refused to accept the obligation of military service which should be a concomitant of the privilege which he sought to obtain and preserve.

The motion for an injunction to restrain the enforcement of the deporta-tion order is denied. The motion of the respondent for summary judgment dismissing the petition of the petitioner is granted.

So ordered.

16. See Ceballos v. Shaughnessy, 2 Cir., 229 F.2d 592.