**Hilario ALARCON–BAYLON, Appellant,**

v.

**Herbert BROWNELL, Jr., Attorney General of the United States, et al., Appellees.**

**No. 16566.**

United States Court of Appeals
Fifth Circuit.

Dec. 11, 1957.

Albert Armendariz, El Paso, Tex., for appellant.

Holvey Williams, Asst. U. S. Atty., El Paso, Tex., Russell B. Wine, U. S. Atty., San Antonio, Tex., James E. Hammond, Asst. U. S. Atty., El Paso, Tex., for appellees.

Before HUTCHESON, Chief Judge, and RIVES and WISDOM, Circuit Judges.

HUTCHESON, Chief Judge.

This is an appeal from a judgment denying plaintiff's petition to review and set aside a deportation order based on Title 8 U.S.C.A. §§ 1251(a) (1) and 1182 (a).[1]

The facts material to the decision of the sole question it presents, whether the deportation order was in accordance with the law, are in very small compass.[2]

---

1. Sec. 1251(a) (1), 8 U.S.C.A.:
 "(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—
 "(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry."
 Sec. 1182(a) (22), 8 U.S.C.A.:
 "Aliens who are ineligible to citizenship, except aliens seeking to enter as nonimmigrants; or persons who have de-

parted from or who have remained outside the United States to avoid or evade training or service in the armed forces in time of war or a period declared by the President to be a national emergency, except aliens who were at the time of such departure nonimmigrant aliens and who seek to reenter the United States as nonimmigrants."

2. The appellant, a forty-eight year old native and citizen of Mexico, last entered the United States at El Paso, Texas,

Hearings were had by the Immigration and Naturalization Service. After hearing the evidence, including the testimony of appellant, a special board of inquiry made findings of fact,[3] and appellant was ordered deported.

After exhausting his administrative remedies, appellant filed this suit in federal court to set aside the deportation order, and this appeal is from the order denying his petition. While appellant does, in one sentence of his brief, say that he did not leave the United States to avoid the draft, he does not argue this point. His reliance below was, and here is, upon (1) the issuance in 1954 of the Consular visa, and (2) the action of the draft board after appellant's return to the United States in placing him in Class 4-a.

Invoking Delgadillo v. Carmichael, 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17 and Berrebi v. Crossman, 5 Cir., 208 F.2d 498, as holding that deportation statutes should be strictly construed in favor of the alien, appellant argues that the administrative issuance of the 1954 visa and his subsequent classification by the

on May 17, 1955. He resided in the United States from either 1920 or 1929 to January, 1944, when he began living in Mexico.

Beginning prior to January of 1944, when he departed to Juarez, Mexico, appellant was employed by the Southern Pacific Company and making approximately 60 cents an hour. In Mexico he worked for approximately $1.00 a day. Asked why he preferred to work in Juarez, Mexico, for $1.00 a day when he could earn a great deal more than that in El Paso, he answered: "To be present in my mother's home."

Asked why he couldn't live in El Paso and visit his mother daily, he answered he was working at night in El Paso, and asked "Why couldn't you visit your mother during the day time, he answered: "I don't know. I had a very hard head during those days."

Q: "Why couldn't you continue your residence in El Paso, Texas, and visit your mother in Juarez, especially in view of the fact that you started to work in Juarez about March, 1944? A: I did not think about that until it was too late.

Q: "Is it not a fact that one can travel from El Paso, Texas, to Juarez, Mexico, in a matter of minutes and that had you wished to continue your residence in El Paso, you could very easily have visited your mother each and every day? A: Yes, that is true."

Asked why he suddenly decided to abandon his residence, his wife and family at that time, he answered: "That is what I have been thinking about lately."

Queried: "Is it not a fact that you did depart from the United States about January, 1944, in order to avoid military service in this country, he answered, "It is not true. I went to see my mother."

Selective service records reveal that appellant registered for the draft on Oct. 16, 1940; was classified I-a on Oct. 11, 1943; passed a draft physical examination on Nov. 10, 1943; had a blood test on Jan. 12, 1944; was ordered to report for draft induction on Jan. 20, 1944, but failed to do so; that he was again ordered to report for induction on March 15, 1944, and again on August 2, 1944, but failed to do so on either occasion; that the induction notice of August, 1944 was returned unclaimed.

Appellant was admitted for permanent residence at El Paso, upon a visa issued by the American Consulate, April 2, 1954, at Juarez. The record shows that after appellant's return, he was given a status of 4-a by the Draft Board.

3. These were:

"(1) That you are an alien, a native and citizen of Mexico;

"(2) That you are applying for admission to the United States as a non-immigrant border crosser for pleasure;

"(3) That you are in possession of a document in lieu of a valid Mexican passport;

"(4) That you are not in possession of a visa or border identification card;

"(5) That you were a legal resident of the United States from about 1934 until about January of 1944;

"(6) That your wife has been a resident of the United States continuously since about 1934 and your five children have lived in El Paso, Texas, since the dates of their birth;

"(7) That you abandoned your home and your family in El Paso, Texas, and departed from the United States about January, 1944, for the purpose of avoiding military service in the United States;

"(8) That you lived continuously in the border town of Juarez, Mexico, since about January, 1944."

draft board as 4–a have settled in appellant's favor all questions as to his deportability. Pointing to the provision in the caption of Title 8, Section 1182, Sec. 212(a) of the Immigration and Nationality Act: "* * * the following * * * aliens shall be ineligible to receive visas and shall be excluded from * * * the United States."; to the issuance of the Consular visa; and to the action of the draft board in later classifying him in Class 4–a; appellant argues that these determinations are conclusive upon the question at issue here, whether he was deportable under the invoked statute.

We agree with the appellee and the district judge that the evidence on which the deportation order was based fully supports it, and that appellant's contention, that the visa and the draft board classification have precluded the inquiry here made, are untenable. No such effect is accorded by law to such administrative actions, and it was entirely within the competence of the Board of Inquiry to find and conclude that, though the 1954 visa, as a visa, was valid, it was without effect upon the issue tried here and the alien was nevertheless deportable upon proof being made that he was within the invoked statute, deportable as one who had departed from or remained outside the United States to avoid or evade training or service in the armed forces. Cf. Paris v. Shaughnessy, D.C., 138 F.Supp. 36; Marcello v. Ahrens, 5 Cir., 212 F.2d 830, affirmed Marcello v. Bonds, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107; and Lazarescu v. United States, 4 Cir., 199 F.2d 898.

It is equally clear that the classification made by the draft board upon appellant's return, some ten years after he had departed to evade the draft, is without bearing upon his status at the time of his departure or upon the legal effect of that departure upon his deportability.

The judgment appealed from is without error. It is

Affirmed.