MATTER OF RIVA*

In Exclusion Proceedings

A–11239287

Decided by Board May 16, 1969

Since a determination of inadmissibility under section 212(a)(22), Immigration and Nationality Act, is governed by the circumstances under which an alien departed from the United States, a lawful permanent resident alien who, after having been ordered to report for induction in the armed forces, departed this country for the purpose of returning as a draft-free nonimmigrant, nevertheless departed to avoid the draft and was, upon his return, inadmissible under section 212(a)(22) of the Act.

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—
Immigrant—not in possession of a valid immigrant visa.

Act of 1952—Section 212(a)(22) [8 U.S.C. 1182(a)(22)]—
Departed to avoid military service.

ON BEHALF OF APPLICANT:·
Elmer Fried, Esquire
515 Madison Avenue
New York, New York 10005

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

Applicant appeals from the special inquiry officer's order finding him inadmissible under section 212(a)(22) of the Act. His admission to February 15, 1969 was authorized by the special inquiry officer who waived the ground of inadmissibility under section 212(d)(3) of the Act. The issue is whether the applicant has established that his departure from the United States on August 7, 1966 was not to avoid military service. We hold he has failed to carry his burden. We shall dismiss the appeal.

The applicant, a 27-year-old married male, a native and national of Peru, has made several entries. This is his testimony: He was first admitted in August 1965. He came to marry and to take his wife to Peru, where he was employed in his father's business. He sought employment because his wife, a United

---

* The alien in this case is also the subject of Interim Decision No. 1842 (12 I. & N. Dec. 646).

States citizen, desired to delay the move for "a couple of years" (p. 14). Finding he could not work unless he was a permanent resident, he became one in November 1965 although he had no intention of remaining permanently (pp. 14–16, 19). He worked and he also went to school. He registered for the draft in December 1965. Classified I–A in February 1966, he tried, without success, to have his immigration status changed to that of a draft-exempt nonimmigrant on the ground that he intended remaining in the United States not more than two years because he was committed to return to his father's business. Notified to report for induction on August 19, 1966, he again told the draft board that he had no intention of remaining and that he desired to be relieved from liability to service by changing his immigration status or taking any other steps that might be available. He found he could not be relieved. He determined he would go abroad, relinquish his status as a permanent resident, and return in a nonimmigrant status which would place him in a position to gain draft exemption (pp. 15–19, 36; Exc. 2, 3).[1] On August 7, 1966, he left for Peru. After consulting with the American vice consul (pp. 19–20), he sent the Service his alien registration card with the information that he was relinquishing his immigration status, that he had never intended becoming a citizen, and that he had intended residing only temporarily in the United States (pp. 19–20; Ex. 4). He departed not to evade service, but to give up his status as a permanent resident—an act he could not do while in the United States—and return as a nonimmigrant so that he could apply for draft exemption (pp. 33–34).

Applicant returned to the United States on August 30, 1966. He was admitted as a visitor on presentation of the tourist visa on which he had entered in 1965. It was still valid. He continued living with his wife at his old address and went back to school. He had no intention of avoiding the jurisdiction of the draft board. Admitted for three months, he was denied any extension of stay beyond February 1967.

Applicant's testimony continues: In January 1967, he returned to Peru, obtained a visa as the representative of a foreign information media, and gained admittance to the United States in this status on February 11, 1967.[2] He wrote articles for a Peruvian

---

[1] A nonimmigrant whose periods of stay in the United States totaled more than a year was liable for service, 32 CFR 1622.42(a). However, nonimmigrants could file an application for relief from service, 32 CFR 1622.42(b).

[2] Such a nonimmigrant was not required to register for the draft while maintaining status, 32 CFR 1611.2(b)(10).

paper and he also attended school. When the paper failed to pay him for his articles, he stopped writing for it. He did not apply for an extension of stay. He was placed under deportation pro- ceedings and given voluntary departure. In the meantime, he had applied for an immigrant visa, for he had decided to live in the United States permanently. Although he supplied the facts con- cerning his draft problem to the consul in Peru (Ex. 5), he re- ceived notice from him, on April 20, 1968, that his papers were in order and that he was to appear for interview on May 2, 1968. He arrived in Peru about April 26. Before his arrival, the Service informed the consul that they considered him inadmissible as one who had departed to avoid military service. When he appeared before the consul, he was told the problem raised by the Service had to be investigated, that the Selective Service file had been sent for, and that it would take about six weeks to get it. He told the consul that he had to return to the United States to take his school's final exams in two weeks. The consul gave him a student visa and told him to attempt to reenter with it (p. 28).

The record reveals that on his arrival in Miami, the applicant was detained because he did not appear to be clearly admissible, and he was given a hearing in exclusion proceedings. In the ex- clusion proceeding, he sought admission only as a student until he could graduate in January 1969. He told of his desire to someday be a permanent resident, of his awareness that he had to depart to obtain a visa to become one, and of his resolve not to violate his student status while in the United States. The special inquiry officer entered the order from which this appeal is taken.

Counsel contends that applicant is not excludable as a draft evader because he left the United States not to escape service, but to obtain a draft-exempt status. Counsel points to students and divines who, although draft deferred or exempt, are not consid- ered as evading the draft. The contention avoids the issue. We are concerned not with the manner in which the applicant re- turned to the United States, but with the circumstances under which he left. We look to the primary purpose for the departure, *Matter of Nunez-Toro*, 11 I. & N. Dec. 501 (BIA, 1966). Appli- cant had been ordered to report for induction—he left the coun- try to avoid the order: avoidance of induction was the primary purpose of his departure. That he planned to come back draft- free is quite beside the point. His status became fixed at the mo- ment of his departure for purposes of section 212(a)(22), *Marti- nez v. Pilliod*, No. 59 C 2053 (N.D. Ill., April 21, 1961), history in *Petition for Naturalization of Martinez*, 202 F. Supp. 153, 155

(N.D. Ill., 1962). See *Alarcon-Baylon* v. *Brownell*, 250 F.2d 45 (5 Cir., 1957). The situation is not without analogy to that which exists when certain aliens became ineligible for citizenship because they sought relief from liability to military service—their status became fixed when they chose to free themselves from liability to service, *Ceballos* v. *Shaughnessy*, 352 U.S. 599 (1957).

Counsel believes that it is wrong to exclude the applicant as a draft evader because he did no more than others have done with the approval of both the Immigration Service and the Selective Service Board. These agencies permit certain doctors who were admitted to the United States as immigrants to depart and apply at an American consulate for an exchange visitor's visa—a status in which they would no longer be subject to the draft. These doctors were admitted as immigrants for training. They entered the United States solely with the intention of residing here temporarily. When they were admitted they were too old for service. They became subject to the draft when the age limit was raised. Without attempting to pass on the status of the doctors who took advantage of the procedure outlined by counsel, we point out that a departure with the approval of the Selective Service Board is not a departure in the face of the order of the Board to report for induction. It is the latter situation that is before us.

Counsel contends that section 212(a)(22) of the Act was intended to reach the person who departed from the United States to escape service *and* who removed himself from the jurisdiction of the United States. He points out that the applicant has not removed himself from the jurisdiction of the United States, for although he departed from the United States, he did so to reenter in an exempt status and place himself within the jurisdiction of the United States. He bases his contention on his reading of the legislative history of section 212(a)(22) of the Act and of section 349(a)(10) of the Act (8 U.S.C. 1481(a)(10)). The latter section provides for the expatriation of one who departed from the jurisdiction of the United States to escape service. The Service representative contends that if the applicant is not found excludable under section 212(a)(22), he will have accomplished exactly what Congress hoped to prevent—an alien escaping his draft obligations by departing from the United States, but returning to the United States for permanent residence after he is no longer liable for service.

Counsel's contention must be rejected. Counsel would have the section provide that a person who departed to evade service was to be readmitted if he applied for admission while the emergency

that originally called for his service was still in existence, and if he departed with the intention of returning as soon as he had accomplished his evasion of service. This is not the law that Congress passed. The language is clear. It shows no concern with obtaining jurisdiction over an alien who departed: its concern is to prevent the return of the departed alien. We note the law does permit the return of nonimmigrant aliens who were nonimmigrants when they left to evade service, but all other aliens who departed to evade service are *barred* from entry. Moreover, we have already pointed out that the alien's status became fixed at the time of the departure.

Counsel's interpretation could make it possible for individuals to evade service by departing, remaining out until they became ineligible for service because of their age or other reason, and then returning without hindrance while the emergency that required them to serve still existed. We find nothing in the legislative history or example cited by counsel that would justify the conclusion that Congress intended to approve of such conduct.

The special inquiry officer authorized the applicant's admission to the United States temporarily so that he could obtain his degree and conclude his affairs. This was proper.

**ORDER:** The appeal is dismissed.