**In the Matter of the Petition of Jean Andre PARIS, Plaintiff-Appellant,**

**v.**

**Edward J. SHAUGHNESSY, as New York District Director of the United States Immigration and Naturalization Service, Defendant-Appellee.**

No. 137, Docket 24017.

United States Court of Appeals
Second Circuit.

Argued Jan. 22, 1957.

Decided July 2, 1957.

As Amended Sept. 18, 1957.

Abraham Kaufman and William H. Coogan, New York City, for plaintiff-appellant.

Paul W. Williams, U. S. Atty., New York City (Harold J. Raby, Miriam R. Goldman, Asst. U. S. Attys., New York City, of counsel), for defendant-appellee.

Before CLARK, Chief Judge, and LUMBARD and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

Jean Andre Paris, who had entered this country as a quota immigrant for permanent residence in 1950, petitioned the U. S. District Court for the Southern District of New York for a declaration of the invalidity of a deportation order issued against him in 1955. He also sought an injunction against enforcement of the deportation order. Petitioner and respondent each moved for a summary judgment. On the cross-motions the court below denied the petitioner's motion and granted the respondent's motion, thereby dismissing the petition. Petitioner appeals. The opinion below is reported at D.C.S.D.N.Y.1956, 138 F. Supp. 36, where the facts are more fully set forth.

■ Prior to passage of the Immigration and Nationality Act of 1952, 66 Stat. 163, 8 U.S.C.A. § 1101 et seq., Paris voluntarily made application on April 17, 1951 to be relieved from liability for training and service in the armed forces, as permitted pursuant to Section 4(a) of the Selective Service Act of 1948, 62 Stat. 604–606.[1] In so doing he debarred himself from becoming a citizen of the United States. Ceballos v. Shaughnessy,[2] 2 Cir., 1956, 229 F.2d 592, affirmed 1957, 352 U.S. 509, 77 S. Ct. 545, 1 L.Ed.2d 583.

At the time when he applied to be exempted from military service, Paris, as an alien permanent resident of this country, could depart from the United States, visit abroad, and re-enter, legally. Not until the Immigration and Nationality Act of 1952 became law did his subsequent ineligibility to become a citizen affect his freedom in this regard.[3]

1. Section 4(a) of the Selective Service Act of 1948, 62 Stat. 604–606:
"(a) Except as otherwise provided in this title, every male citizen of the United States, and every other male person residing in the United States, who is between the ages of nineteen and twenty-six, at the time fixed for his registration, or who attains the age of nineteen after having been required to register pursuant to Section 3 of this title, shall be liable for training and service in the armed forces of the United States. Any citizen of a foreign country, who is not deferrable or exempt from training and service under the provisions of this title (other than this subsection), shall be relieved from liability for training and service under this title if, prior to his induction into the armed forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President; but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States. * * *"
50 U.S.C.A.Appendix, § 454(a).

2. The statute involved there was the Selective Training and Service Act of 1940, 55 Stat. 844, 845, the comparable language being found in Section 3(a) thereof:

"Except as otherwise provided in this Act, every male citizen of the United States and every other male person residing in the United States, who is between the ages of twenty and forty-five * * * shall be liable for training and service in the land or naval forces of the United States: Provided, that any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with the rules and regulations prescribed by the President, but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States * * *."

3. Under the Immigration Act of 1924 Paris was a "non-quota immigrant" when returning from a visit abroad, the pertinent part of Section 4 (former 8 U.S.C.A. § 204) thereof reading:
"When used in this Act the term 'non-quota immigrant' means—
* * * (b) an immigrant previously lawfully admitted to the United States, who is returning from a temporary visit abroad; * * *"

■ Now the Immigration and Nationality Act of 1952 excludes from admission for permanent residence aliens who are ineligible for citizenship;[4] and, of course, provides for the deportation of aliens who at the time of entry are excludable.[5] When Paris last departed the United States on August 15, 1953, and then entered this country on September 15, 1953, the Immigration and Nationality Act of 1952 was in effect, and so by Section 212(a) (22) thereof Paris was an excludable alien. He contends, however, that the provisions of Section 405(a),[6] the so-called "saving clause," of the 1952 Act apply to him; that, as to him, Section 212(a) (22) is inapplicable; and that he is as non-deportable now as he was in 1952.

But Paris misreads Section 405(a). His pre-existing status of non-deportability would have remained unchanged *unless* the 1952 Act *otherwise specifically provided*. Section 212(a) (22) of that Act does so otherwise specifically provide. Cf. Lehmann v. United States, ex rel. Carson, 77 S.Ct. 1022; Mulcahey v. Catalanotte, 77 S.Ct. 1025.

The judgment below is affirmed.

And Section 13(c) of that Act (former 8 U.S.C.A. § 213(c)) read:
"No alien ineligible to citizenship shall be admitted to the United States unless such alien (1) is admissible as a nonquota immigrant * * *."

4. The pertinent provision is Section 212 (a) (22), 8 U.S.C.A. § 1182(a) (22), reading:
§ 212(a) (22), 8 U.S.C.A. § 1182(a) (22):
"Sec. 212. (a) Except as otherwise provided in this Act, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
* * * * *
"(22) Aliens who are ineligible to citizenship, except aliens seeking to enter as nonimmigrants; or persons who have departed from or who have remained outside the United States to avoid or evade training or service in the armed forces in time of war or a period declared by the President to be a national emergency, except aliens who were at the time of such departure nonimmigrant aliens and who seek to reenter the United States as nonimmigrants."
When Paris effected entry in 1953 he did not enter as a "nonimmigrant" but entered as an "immigrant." Section 101 (a) (15) defines every alien as an "immigrant" except aliens falling within certain classes; and Paris, not being within any of those classes, ceased to be a "nonquota immigrant" under the 1924 Act and became an "immigrant" under the 1952 Act.
It is immaterial that this change of status with its resulting effect upon

Paris's freedom of ingress into, and his acceptability within, this country applies retrospectively to him. Lehmann v. U. S. ex rel. Carson, 77 S.Ct. 1022, and cases cited in footnote 4 thereof.

5. The pertinent provision is § 241(a) (1), 8 U.S.C.A. § 1251(a) (1):
"Sec. 241. (a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—
"(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry; * * *"

6. § 405(a), 8 U.S.C.A. § 1101 note:
"Sec. 405. (a) Nothing contained in this Act, *unless otherwise specifically provided therein*, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes, conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, *unless otherwise specifically provided therein*, hereby continued in force and effect." (Emphasis added.)