Casimir Charles RAMASAUSKAS, Petitioner,

v.

W. T. FLAGG, District Director, Chicago District Immigration and Naturalization Service of the United States Department of Justice, Respondent.

No. 13681.

United States Court of Appeals Seventh Circuit.

Oct. 12, 1962.

Rehearing Denied Nov. 20, 1962.

Frank J. McAdams, Jr., Paul M. Smith, Jr., Chicago, Ill., for petitioner.

James P. O'Brien, U. S. Atty., John Powers Crowley, Asst. U. S. Atty., Chicago, Ill. (John Peter Lulinski, Asst. U. S. Atty., of counsel), for respondent.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and SWYGERT, Circuit Judges.

HASTINGS, Chief Judge.

In this action, petitioner Casimir Charles Ramasauskas seeks judicial review of an order finding him subject to deportation to Argentina. This proceeding finds its factual and procedural setting in the following narrative.

Petitioner is a 31 year old male, a native of Lithuania. He first entered the United States at Boston, Massachusetts on July 8, 1949 as an immigrant for permanent residence.

On December 19, 1949, petitioner registered under the Selective Service Act with Local Board No. 61 in Chicago, Illinois. On March 30, 1951, August 14, 1951 and December 26, 1951, he was ordered to report for a physical examination preliminary to possible induction into the United States Army. He failed to respond to such orders. On January 8, 1952, he was ordered by Local Board No. 61 to report for induction into the United States Army. He failed to report.

However, on January 7, 1952, petitioner wrote a letter to Local Board No. 61 in which he stated that he was an alien residing temporarily in the United States; that he was ready to depart to Argentina to join his father; that it was his "further desire to waive all the privileges and opportunities that the United States extended to me and therefore I absolutely refuse to join the United States Army, due to the fact as stated before, that I am an alien"; and requested that he be classified accordingly.

Prior to that, on August 22, 1951, at the request of petitioner's attorney and the Lithuanian Consul in Chicago, Local Board No. 61 issued petitioner a permit to depart from the United States to Argentina to join his father there and to remain in Argentina for permanent residence.[1] On March 10, 1952, almost seven months after receiving such permit and more than two months after receiving an order to report for induction, he obtained his visa as an immigrant to Argentina from the Argentine Consul in Chicago. He had represented that his father was ill.

Petitioner left the United States from Miami, Florida on March 14, 1952 and was admitted to Argentina at Buenos Aires as an immigrant for permanent residence on the same day.

Petitioner resided in Argentina[2] until he last entered the United States on February 6, 1954 at San Juan, Puerto

---

1. Under date of April 26, 1951, petitioner and his mother joined in signing a statement written in the Lithuanian language, which was submitted to Local Board No. 61 in support of his application for a permit to go to Argentina, containing the following:

"It was explained to me and I understand very well, that if my son declines to enter the U. S. A. military service, he forfeits all privileges and rights of this country, that are extended every citizen and alien, according to the Constitution and laws of this U. S. A.

"We both, my son and I, agree with this statement and of our free will, affix our signatures hereto before two witnesses, that this statement is voluntary and is perfectly understood, and we know what responsibility my son may face in the future."

2. Petitioner was employed as a laboratory technician from August, 1953, to February, 1954 by Armour and Company Laboratories in Buenos Aires. His father has resided in Argentina since 1932.

Rico pursuant to Section 101(a) (15) (B) of the Immigration and Nationality Act, 8 U.S.C.A. § 1101(a) (15) (B) as a temporary visitor for pleasure to visit his mother to March 6, 1954. On his application, he was granted extensions of temporary stay to September 6, 1954 and February 6, 1955. On March 28, 1955, he was ordered to show cause why he should not be deported as a visitor for pleasure who had failed to comply with the conditions of such status.

On January 20, 1955, Private Bill, H.R. 2745 was introduced in the House of Representatives, 84th Congress, 1st Session, providing that upon enactment petitioner should be held and considered to have been lawfully admitted to the United States for permanent residence. It was not enacted into law.

Hearings were had before a Special Inquiry Officer of the Immigration and Naturalization Service for a total period of four days beginning on April 25, 1955 ending on August 12, 1955. On September 13, 1955, the Special Inquiry Officer found that the petitioner was subject to deportation under Section 241(a) (9) of the Immigration and Nationality Act, since he had stayed longer than permitted as a visitor for pleasure; and also that he was subject to deportation under Section 241(a) (1) of the Act,[3] in that he was an alien who had departed or remained outside the United States to avoid or evade training or service in the Armed Forces in time of war or a period declared by the President to be a National Emergency under Section 212(a) (22) of the Act.[4]

This decision was appealed to the Board of Immigration Appeals, which affirmed the decision of the Special Inquiry Officer on December 2, 1955.

Thereafter, petitioner voluntarily enlisted in the United States Army and served from July 17, 1956 to January 9, 1957, when he received an honorable discharge.[5]

On January 24, 1957, a second Private Bill was introduced in the House of Representatives providing, if enacted, that petitioner would be considered to have been lawfully admitted to the United States for permanent residence. This bill was not enacted into law.

---

3. Section 241 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1251, provides in part as follows:

"(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

"(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry; * * *

"(9) was admitted as a nonimmigrant and failed to maintain the nonimmigrant status in which he was admitted or to which it was changed pursuant to section 1258 of this title, or to comply with the conditions of any such status * * *."

The following pertinent regulation, 8 C.F.R. § 214.2 (1958), provides in part as follows:

"*Conditions of nonimmigrant status* An alien found admissible as a nonimmigrant under the Immigration and Nationality Act shall be admitted to the United States, and an alien after admission to the United States as a nonimmigrant or after acquisition of a nonimmigrant status under the Immigration and Nationality Act or any prior act shall be permitted to remain in the United States only upon the following conditions:

* * *

"(b) That he will depart from the United States within the period of his admission or any authorized extension thereof."

4. Section 212 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1182, provides in part as follows:

"(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States: * * *

"(22) * * * persons who have departed from or who have remained outside the United States to avoid or evade training or service in the armed forces in time of war or a period declared by the President to be a national emergency * * *."

5. On July 26, 1957, petitioner filed a motion with the Board of Immigration Appeals to reopen and reconsider his prior appeal on the grounds of newly discovered evidence, i. e., his honorable discharge. This motion was denied on July 21, 1961.

On March 23, 1961, petitioner was notified to report on April 10, 1961 for deportation to Argentina.

On April 5, 1961, petitioner filed the present action for judicial review in the United States District Court for the Northern District of Illinois. This was in the nature of a petition for a writ of habeas corpus. Monte Moutal, Acting District Director, Chicago District, Immigration and Naturalization Service of the United States Department of Justice was named as respondent therein.

On April 14, 1961, petitioner filed an "amended complaint" in the district court in the nature of an action for declaratory judgment. On April 28, 1961, petitioner filed a supplement thereto. On May 3, 1961, respondent (defendant) Moutal, Acting District Director, filed his answer thereto.

On September 25, 1961, respondent filed a motion for summary judgment in the district court on the grounds that the pleadings and certified record of the proceedings before the Immigration and Naturalization Service filed therewith as Defendant's Exhibits "A" and "B" show that there is no genuine issue as to any material fact and that respondent is entitled to judgment as a matter of law. Respondent filed a supporting brief. Petitioner filed no answering brief.

The motion for summary judgment was taken under advisement by the district court without any further hearing on the merits and the matter was pending in that posture on October 26, 1961.

October 26, 1961 is the effective date of Public Law 87–301, 8 U.S.C.A. § 1105a, which provides for judicial review of orders of deportation and exclusion. This act provides in part (Section 5(b)) that any judicial proceeding seeking review of a final order of deportation pending unheard in any district court on the effective day of the Act be transferred to the appropriate court of appeals.

On March 2, 1962, the district court ordered this cause transferred to this court for determination. The matter is before us on the pleadings, briefs and administrative record filed in the district court and briefs of the parties filed here.

While petitioner's brief filed in this court consists largely of a statement of facts and argument thereon, it prays "that his petition for a writ of habeas corpus be granted and that he be discharged from the technical custody of the immigration authorities." Petitioner's brief is not drawn in compliance with Rule 17(a) of this court, 28 U.S.C.A. governing the form to be followed in preparing briefs. It certainly is not sufficient as a petition for a writ of habeas corpus. We shall overlook formalities and treat it as petition for review of the order of deportation, having in mind the serious nature of the matter before us.

■ We have carefully reviewed the entire administrative record before us. We need not elaborate on the evidence brought before the Special Hearing Officer. It is sufficient for us to say that the finding of the Special Hearing Officer that petitioner is a deportable alien is supported by "reasonable, substantial and probative evidence on the record considered as a whole." [6] Lattig v. Pilliod, 7 Cir., 289 F.2d 478, 480 (1961).

■ It follows, necessarily, that the finding of the Special Inquiry Officer that petitioner was an alien who had departed or remained outside the United States to avoid or evade training or service in the Armed Forces in time of war or a period declared by the President to be a National Emergency under Section 212 (a) (22) of the Act, must be regarded by us as conclusive.

6. Section 106 of the Immigration and Nationality Act, 8 U.S.C.A. § 1105a, provides in part as follows:

"(4) * * * the petition shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's findings of fact if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive * * *."

■ The fact that petitioner voluntarily served in the army after his return to the United States can have no legal effect upon his status at the time of his departure. The legal effect of his departure to avoid service in the Armed Forces is that he is excluded from admission to the United States and thereby becomes deportable. See Alarcon-Baylon v. Brownell, 5 Cir., 250 F.2d 45, 47 (1957). Cf., Jubran v. United States, 5 Cir., 255 F.2d 81 (1958); United States v. Kenny, 2 Cir., 247 F.2d 139 (1957).

■ It is clear that petitioner is deportable since he stayed longer than permitted as a visitor for pleasure when he was readmitted temporarily to visit his sick mother. He failed to maintain his status as a nonimmigrant. He violated the conditions of his status by failing to depart on the appointed date. 8 C.F.R. § 214.2(b) (1958), supra note 3. This seems to have been well established since Philippides v. Day, 283 U.S. 48, 51 S.Ct. 358, 75 L.Ed. 833 (1931), and needs no further citation of authority.

When petitioner was honorably discharged from the Army, he was in no higher status than at the time of his enlistment. He was a deportable alien when he enlisted and remained one at the time of his honorable discharge. His intervening military service had no effect upon his status as a nonimmigrant. United States ex rel. Frangoulis v. Shaughnessy, 2 Cir., 210 F.2d 572 (1954); United States v. Neely, 7 Cir., 202 F.2d 289, 293 (1953).

Petitioner's counsel cites no authority in his brief in support of his contentions. Petitioner's argument is based on an emotional appeal pointing to his present status as a technical student and his intervening military service. Moving as such considerations may be, we may not use them to interpose our judgment in the face of the administrative record under review. Petitioner had a fair hearing and was denied relief by those charged with that responsibility. His two attempts to gain Congressional assistance were unavailing. He has been accorded procedural due process.

The order of deportation is fully supported by the administrative record. Respondent (defendant) is entitled to judgment as a matter of law, his motion for summary judgment is granted and the order of deportation under review herein is affirmed.

Order affirmed.