Rudolph AMBRA, Appellant,

v.

Edward P. AHRENS, District Director, United States Immigration and Naturalization Service, Miami, Florida, as Agent for Robert F. Kennedy, Attorney General of the United States, Appellee.

No. 20453.

United States Court of Appeals
Fifth Circuit.

Dec. 17, 1963.

David W. Walters, Miami, Fla., of Walters, Moore & Costanzo, Miami, Fla., for appellant.

Joseph W. Monsanto, Trial Atty. Immigration & Naturalization, Donald E. Stone, Asst. U. S. Atty., Miami, Fla., William A. Meadows, Jr., U. S. Atty., for appellee.

Before RIVES and JONES, Circuit Judges, and DAWKINS, Jr., District Judge.

BENJAMIN C. DAWKINS, Jr., District Judge.

In the District Court, in an action for a declaratory judgment, appellant sought review of an agency denial of his application, made pursuant to Section 245 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1255, for an adjustment of status from that of a nonimmigrant temporary visitor to that of a permanent resident. The District Court found against him, from which judgment he takes this appeal.

Appellant and appellee agree that the only question presented is whether the Immigration and Naturalization Service must furnish appellant with detailed findings of fact upon which their denial of the application was based.

Appellant, Rudolph Ambra, is a native and citizen of Argentina, born in Buenos Aires July 27, 1910. He was admitted to the United States in 1936 as a permanent resident, having been here a number of times prior to then, as described in more detail infra. Thereafter he made several trips to Argentina and on each return prior to July 1954 was admitted as a returning resident in possession of a valid re-entry permit. However, on September 15, 1954, when he applied for a re-entry permit, it was denied by the District Director upon the ground that his arrival July 14, 1954, was not a lawful one for permanent residence.

The action upon which this denial was based relates back to October 5, 1943, during World War II, when Ambra was granted deferment from military service after applying for such relief upon DSS Form 301, entitled "Application by Alien for Relief from Military Service." This form contained a statement that the applicant knew his making of the application would debar him from becoming a citizen of the United States. Section 315 of the Act, 8 U.S.C. § 1426, provides for debarment in such cases and stipulates that the records of the Selective Service

System " * * * shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

After establishing that persons who have taken such action are ineligible for citizenship, the provisions of Section 212 (a) (22) of the Act, 8 U.S.C. § 1182(a) (22), prevent appellant from obtaining an immigrant visa, thereby barring him from becoming a permanent resident.

November 22, 1954, appellant's appeal of the denial of his application for a re-entry permit was affirmed by the Assistant Commissioner of the Service, this being final administrative action. Without taking further steps to contest the denial, appellant returned to Argentina.

Thereafter, he was admitted to the United States as a temporary visitor on three occasions. While in this country on the third visit, January 15, 1960, Ambra applied for adjustment of status to that of a permanent resident under the provisions of Section 245 of the Act, 8 U.S.C. § 1255. This application was denied by the District Director,[1] his ruling being affirmed by the Regional Commissioner[2] April 14, 1960. Deportation proceedings were instituted September 6, 1960, which ultimately resulted in issuance of a Warrant of Deportation April 13, 1961, which is still outstanding.

August 7, 1962, appellant brought this action. Subsequently, in support of his motion for summary judgment in the District Court, appellant sought remand of his case to the Immigration and Naturalization Service in order that it could make specific findings of fact as to whether he signed the DSS Form 301 *knowing* that it would render him ineligible for United States citizenship. An affidavit presented in his behalf is to the effect that when he executed the form he wanted tempo-

rary deferment only until he could liquidate his business; but this goes directly into the teeth of the undisputed fact that he did not liquidate his business and never reported to his draft board that he no longer needed the deferment. He simply sat out the rest of the war without taking any positive action to let the board know he was ready to serve.

The trial court found that "Implicit in the ruling [of the Commissioner] is the finding that Plaintiff had signed the application for relief from service *knowingly*." It went further and concluded from the admitted facts and documentary evidence in the record that "as a matter of law the Plaintiff *knowingly* sought relief and is therefore ineligible for admission as a permanent resident." (Emphasis added.)

By the terms of the statute adjustment of status of a nonimmigrant alien to that of a permanent resident of the United States is committed to the discretion of the Attorney General. Before the Attorney General may adjust the status of a nonimmigrant alien to that of an alien lawfully admitted for permanent residence, certain prerequisites must be met. Among these is that the alien must be eligible for admission to this country as a permanent resident. Section 212(a) of the Act, 8 U.S.C. § 1182(a), provides that aliens who are ineligible for citizenship shall not be admitted to the United States as immigrants. Appellant was found to be ineligible because he had obtained exemption from military service upon the ground that he was an alien.

Appellant does not ask this Court to review the record and rule that he is eligible for citizenship. Instead, he requests that we remand and direct the

---

1. "Your application for status as permanent resident under Section 245 of the Immigration and Nationality Act has been denied for the following reasons: You are ineligible to receive an immigrant visa and are inadmissible to the United States for permanent residence pursuant to Section 212(a) (22) of the Immigration and Nationality Act. You are inadmissible because you filed Form DSS–301 request-

ing relief from military service, and your request for such relief was granted."

2. "You are informed that the Regional Commissioner of this Service has dismissed your appeal from the order of this office denying your application for adjustment of status under Section 245 of the Immigration and Nationality Act."

Service to make specific findings of fact. He does not argue that Section 8 of the Administrative Procedure Act, 5 U.S.C. § 1007, applies;[3] nor is it contended that any provision of the Immigration Act requires formal findings of fact.

Although courts frequently have required specific findings of fact by administrative agencies for practical reasons,[4] no compelling reason for requiring such findings in this case has been suggested. Appellant's desire for specific findings apparently is grounded upon his hope that the Service somehow will determine that he did not *knowingly* waive his right to apply for naturalization as an American citizen.

Such a finding would form a basis for appellant's argument which centers upon interpretation of Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951). But this case is different from Moser. Moser proved beyond dispute that he had sought information and guidance from the highest available authority, and was advised to sign a revised DSS Form 301 which did not contain an express waiver such as here.[5] The Court held that "what he [Moser] signed was entirely consistent with what he believed and claimed." He was led to believe that he would be exempted from military service because of a treaty between the United States and his native country, Switzerland, which provided that "The citizens of one of the two countries, residing or established in the other, shall be free from personal military service." He reasonably believed, therefore, that he would not lose his right to apply for naturalization. Here, however, appellant's attempted proof falls far short of establishing a case similar to Moser's.

The Second Circuit has held that, in the absence of special circumstances such as existed in Moser, an alien forfeits his right to apply for citizenship when he requests a waiver from military service mistakenly believing that it will not impair his eligibility for citizenship.[6] The Ninth Circuit and District of Columbia Circuit, on the other hand, under similar circumstances, have indicated that there must be a finding that the Selective Service form was voluntarily executed with full knowledge of its effect.[7]

3. Section 10 of the Administrative Procedure Act, 5 U.S.C. § 1009, which provides for judicial review of agency action, has been held applicable to deportation proceedings. Shaughnessy v. Pedreiro, 349 U.S. 48, 75 S.Ct. 591, 99 L. Ed. 868 (1955). However, Section 8 of that Act, which requires all decisions of any agency to " * * * include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact * * *," has been held to be nonapplicable to deportation proceedings. Marcello v. Bonds, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955). The Court's reasoning in Marcello was that Congress had set up a specialized administrative procedure for deportation proceedings and did not intend for the procedural provisions of the Administrative Procedure Act to apply. Since the matter here presented is substantially in the same category, we think similar reasoning requires the conclusion that Congress did not intend for the procedural provisions of the Administrative Procedure Act to apply to actions taken under Section 245.

4. Davis, Administrative Law Treatise § 16.05:
   "The practical reasons for requiring administrative findings are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts, irrespective of a statutory requirement. The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction."

5. A footnote to the form did contain a quote from the Act which indicated such an application would debar the applicant from becoming a citizen of the United States; but the Court found, at 341 U.S. 46, 71 S.Ct. at 555-556, 95 L.Ed. 729 that " * * * [t]he express waiver of citizenship had been deleted" from the form.

6. United States v. Kenny, 247 F.2d 139 (2d Cir., 1957; Cf. Mannerfrid v. United States, 200 F.2d 730 (2d Cir., 1952).

7. Brunner v. Del Guercio, 259 F.2d 583 (9th Cir., 1958); Machado v. McGrath, 89 U.S.App.D.C. 70, 193 F.2d 706 (1951).

We find it unnecessary here to take sides in this apparent conflict between the Circuits since the record in this case fully supports the District Court's finding that it is implicit in the Regional Commissioner's ruling that appellant knowingly waived his eligibility for citizenship. The District Director informed appellant that he could not be admitted to the United States as a permanent resident because he had filed DSS Form 301 and obtained relief from military service on the basis of that application. Upon appeal to the Regional Commissioner, the question as to whether an intelligent waiver had been made by appellant was thoroughly briefed and argued by his counsel. Nevertheless, the Regional Commissioner dismissed the appeal. We agree with the District Judge that it was indeed implicit in the Service's rulings that they factually concluded Ambra executed the DSS Form 301 *knowing* this would debar him from United States citizenship.

The record plainly shows that Ambra fully understands, reads and writes the English language. He received a substantial part of his education in the schools of New York City, where he came with his family in 1921, and remained there most of the time until 1939. On November 15, 1939, he filed a petition for naturalization, which was denied by the United States District Court in 1940, evidently because he had been convicted of a crime and had received a one-year sentence.

In June of 1943, some three months before he executed the Form 301, he gave a sworn "Alien's Personal History and Statement" on DSS Form 304, the last two paragraphs of which read as follows:

"Section XI.—STATEMENT
OF ALIEN

"41. I do ....... object to service
(do, do not)
in the land or naval forces of the United States.

"You are informed that if you are an enemy alien or subject of a country allied with the enemy, you will not ordinarily be acceptable for service in the land or naval forces of the United States if you indicate in Item 41 above that you object to such service. If you are a citizen or subject of any other country, you may indicate in Item 41 whether you do or do not object to service in the land or naval forces of the United States but such objection may be disregarded. *If you are a citizen or subject of a neutral country, and you do not wish to serve in the land or naval forces of the United States, you may apply to your local board for Application by Alien for Relief from Military Service (Form 301) which, when executed by you and filed with the local board, will relieve you from the obligation to serve in the land or naval forces of the United States, but will also debar you from thereafter becoming a citizen of the United States.*

"Section XII.—STATEMENT AND
SIGNATURE OF ALIEN

"42. I RUDOLPH AMBRA, do solemnly swear (or affirm) that I am the person named in Item 1 of this statement, that I have read (or have had read to me) every item and every answer or statement made herein, and that each and every such answer and statement is true and complete to the best of my knowledge, information, and belief.

[s]   RUDOLPH AMBRA
(Signature)

"Subscribed and sworn to before me this 11th day of June, 1943.

[s] William Beckley   Notary Public
(Official Position)"
(Signature of officer
administering oath)

(Emphasis in Section XI added.)

It is to be noted especially that *at that time* he did *object to service* in the land or naval forces of the United States; that he swore that he had read (or had read to him) " * * * every item and every answer or statement made herein * * * "; and that the last printed sen-

tence immediately above his admitted signatures advised him he would be debarred from becoming a citizen of this country if he applied for relief from military service.

He further admitted that on September 22, 1943, in executing Form 301, he personally filled in all of the blanks, including the words "have not" in the sentence immediately following the printed words, "I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States." Applicable excerpts from this form read as follows:

"Date received SEPT. 22, 1943

## "APPLICATION BY ALIEN FOR RELIEF FROM MILITARY SERVICE

"State of NEW YORK ⎫
County of NEW YORK ⎬ ss:

"I, RUDOLPH AMBRA ............................ AMBRA
    (First name)          (Middle name)      (Surname)
do solemnly swear—affirm—that I reside at N. Y. CITY,     N. Y.
                                    (City)     (County)
N. Y.;  that I am registered with Local Board   15A,   WASH.D.C.
(State)                             (Number)   (City)
D. C.  ............; that my order number is *2961*, and serial num-
(County)    (State)
ber is *7962;* and that I am a citizen or subject of ARGENTINA ARGENTINA, which is neutral in the present war.  My alien registra-
  (Country)
tion number is *381,947.*

"I do hereby make application to be relieved from liability for training and service in the land or naval forces of the United States, under the Selective Training and Service Act of 1940, as amended, in accordance with the act of Congress approved December 20, 1941. *I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States.*
I HAVE NOT ..................................
              (have) or (have not)
filed a declaration of intention to become a citizen of the United States.

\*   \*   \*

[s]´ RUDOLPH AMBRA
(Signature of registrant)

"Subscribed and sworn to before me this 24th day of September, *1943.*
[s]  B. F. January
(Signature of officer)

Ass't Clerk Bd. 549
(Designation of officer)"

(Emphasis added; Ambra's handwriting capitalized.)

———◆———

Under these circumstances, notwithstanding appellant's present protestation that he did not knowingly waive his right to apply for American citizenship, we find this to be unbelievable, just as the Service obviously found. In fact,

it appears conclusive that all he is doing in this proceeding is attempting to stall his deportation as long as possible. Even if the law required remand, it would be an exercise of futility to send this case back to the Service for the making of specific findings on a record such as this, where it is so certain that its officials would reach the same conclusions; to be followed thereafter by several years' more litigation before appellant finally is deported, as he plainly deserves to be.

For these reasons we hold that the District Court correctly denied the relief sought; and its judgment is

Affirmed.