**Renato RIVA, Appellant,**

v.

**John N. MITCHELL et al.**

**No. 71–1530.**

United States Court of Appeals,
Third Circuit.

Argued April 21, 1972.

Decided May 16, 1972.

Austin T. Fragomen, Jr., New York City (Elmer Fried, New York City, on the brief), for appellant.

George E. Mittelholzer, Asst. U. S. Atty., Newark, N. J. (Herbert J. Stern, U. S. Atty., Newark, N. J., on the brief), for appellees.

Before ADAMS, MAX ROSENN and HUNTER, Circuit Judges.

OPINION OF THE COURT

MAX ROSENN, Circuit Judge.

Appellant was declared inadmissible to the United States under 8 U.S.C.A. § 1182(a) (22) by a Special Inquiry Officer. The Board of Immigration Appeals upheld this decision. Appellant then proceeded to file a petition with the District Court for the District of New Jersey seeking a declaratory judgment to have the construction given 8 U.S.C.A. § 1182(a) (22) by the Inquiry Officer overturned. The district court by summary judgment upheld the findings of fact and conclusions of law of the Special Inquiry Officer and the Board of Immigration Appeals. This appeal followed. We affirm.

The appellant entered the United States in August 1965 as a non-immigrant visitor in order to marry and return to Peru with his wife. He was married on August 8, 1965, to a native born United States citizen. Because his

wife was unable to leave the United States at the time, they decided to delay the move to Peru until June 1966. Finding he could not work as a non-immigrant visitor, he asked for and obtained on November 29, 1965, the status of permanent resident allegedly at the request of his employer. He then worked and also went to school.

Since appellant had obtained permanent resident status, it was necessary for him to register with his local draft board. In February of 1966, his draft board classified him I–A, and ordered him to report for a physical examination on March 14, 1966. He, thereupon, unsuccessfully sought to have his immigration status changed to that of a draft-exempt non-immigrant on the ground that he did not intend to remain in the United States more than two years because he was committed to return to his father's business. Notified to report for induction on August 19, 1966, appellant informed the draft board that he had no intention of remaining in the United States and that he desired to be relieved from army induction by changing his immigration status. He was again unsuccessful.

Appellant determined that he would return to Peru, relinquish his status as a permanent resident, and return in a non-immigrant status which would enable him to gain draft exemption. He left the United States on August 7, 1966, and the following day consulted with the American Vice Consul in Lima, Peru. He then wrote a letter to the United States Immigration authorities advising them that he was surrendering his immigration status, that he had never intended becoming a citizen, and that he had intended residing only temporarily in the United States. He also returned his Alien Registration Receipt Card with this letter. On August 30, 1966, he returned to the United States as a non-immigrant visitor by presenting the tourist visa with which he had entered in 1965.

He continued living with his wife at his old address and went back to school.

Thereafter, he applied for an extension of stay as a visitor. This application was denied in January of 1967. He left the United States during that month, and then returned as a representative of a foreign information media. However, he was primarily occupied in completing his college studies. At this time, appellant was attempting to obtain an immigrant visa through the offices of the American Consul in Lima, Peru, because he had decided to live permanently in the United States. In May of 1968 while currently under deportation proceedings, appellant left for Peru.

During an interview with the American Consul in Peru, appellant, allegedly for the first time, became aware that there was a legal issue concerning his eligibility for an immigrant visa. Appellant desired, however, to return quickly to the United States in order to take his school's final examinations. He obtained from the Consul a student visa and with this sought to return to the United States. During his entry to the United States, the primary Immigrant Inspector in Miami, Florida, was uncertain as to the proper status of appellant. He was admitted to the United States, but his case was brought to the attention of a Special Inquiry Officer.

That officer, after a hearing, concludsed that appellant was inadmissible to the United States ". . . as an alien who departed from the United States to evade military service in the armed forces of the United States. . . ." However, the officer permitted appellant to remain in the United States until February 15, 1969, in order to complete his examinations and obtain his degree.

The decision of the district court, and indeed, the decision of the Special Inquiry Officer and the Board of Immigration Appeals, essentially turned not upon any disputed facts, but upon the terms of the statute. 8 U.S.C.A. § 1182(a) (22) provides that among the

classes of aliens who shall be excluded from the United States are:

. . . persons who have departed from or who have remained outside the United States to avoid or evade training or service in the armed forces in time of war or a period declared by the President to be a national emergency. . . .[1]

Appellant has not attacked the finding that he left the United States in order to obtain an immigration classification that would allow him to avoid service in the armed forces. Indeed, it would appear impossible for him to do so. Rather, his principal argument is that the statute was not meant to apply to persons in his position. Appellant argues that his position is different from those to whom the statute is directed because: (1) the law addressed itself to draft dodgers who fled the United States with the purpose of returning at the cessation of hostilities. He contends that "[t]here is no indication that Congress intended to impose penalties upon someone whose physical departure was brief and for the sole purpose of acquiring non-immigrant status upon his prompt return to the United States;" (2) his departure was not to avoid or evade military service but solely to acquire a non-immigrant status which he would not acquire without a physical departure.

■ Appellant's argument, as sophisticated as the stratagem by which he secured draft exemption, is specious. Although his departure enabled him to legally secure a draft exempt status, it was made in the face of 8 U.S.C.A. §

1182(a) (22) which declared aliens inadmissible who have departed the United States to *avoid* or *evade* training or service in the armed forces in time of war or national emergency. Because the departure was brief and his return to the jurisdiction of the draft board in draft exempt status was immediate does not insulate the departure from the exclusionary provisions of the statute. "It is equally clear that the classification made by the draft board upon appellant's return . . . is without bearing upon his status at the time of his departure or upon the legal effect of that departure upon his deportability." Alarcon-Baylon v. Brownell, 250 F.2d 45, 47 (5th Cir. 1957). The obvious purpose at the time of departure was to acquire non-immigrant and draft exempt status, according to the findings of the Special Inquiry Officer, and thereby avoid military service. Military service was avoided by securing non-immigrant status. The findings are supported by substantial evidence.

The case law construing § 1182(a) (22) is not voluminous. But, both of appellant's contentions have been rejected *sub silencio* in other circuits. Jolley v. Immigration and Naturalization Service, 441 F.2d 1245 (5th Cir.), cert. denied, 404 U.S. 946, 92 S.Ct. 302, 30 L. Ed.2d 262 (1971); Ramasauskas v. Flagg, 309 F.2d 290 (7th Cir. 1962).

■■ It would be strange indeed, if appellant were able to succeed here, on what is essentially the argument that he did no more than he was legally entitled to, when under 8 U.S.C.A. § 1426 aliens

---

1. The pertinent text of the statute reads as follows:

(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

\* \* \* \* \*

(22) Aliens who are ineligible to citizenship, except aliens seeking to enter as nonimmigrants; *or persons who have departed from* or who have remained outside *the United States to avoid or evade training or service in the armed*

*forces* in time of war or a period declared by the President to be a national emergency, except aliens who were at the time of such departure nonimmigrant aliens and who seek to reenter the United States as nonimmigrants. . . . (Emphasis supplied.)

On December 16, 1950, President Truman issued Presidential Proclamation Number 2914, 3 CFR 99 (1949–1953 Comp.) declaring that a state of national emergency existed. Neither Congress nor subsequent Presidents have revoked this proclamation.

who have *lawfully* obtained relief from military service are ineligible for citizenship.[2] Ambra v. Ahrens, 325 F. 2d 468 (5th Cir. 1963). And, of course, aliens who are ineligible for citizenship are excluded under the statute from admission as permanent residents. Paris v. Shaughnessy, 247 F.2d 1 (2d Cir. 1957). When § 1426 is read in conjunction with § 1182, it is clear that the intention of Congress was to see that once an alien faced induction into the armed services, he would have to choose between either maintaining *permanently* his status *as an alien* or serving in the armed forces and securing the right to become a citizen and permanent resident.

Appellant's second contention— that he returned to the United States and placed himself physically within the jurisdiction of his draft board—is likewise without merit. He had now immunized himself from military service by securing a draft exempt status. Even when an alien returns to the United States and serves in the armed forces, he may still be excludable under § 1182(a) (22) if he left the country to avoid military service. Ramasauskas v. Flagg, supra.

Appellant has made reference to the legislative history of § 1182(a) (22). His argument, however, does not contradict the conclusion to which we come. Generally, appellant's use of legislative history shows only that Congress had principally in mind those who, in order to evade the draft, placed themselves without the United States over an extended period of time. At most, this means only that appellant was not in a class against whom the Act was primarily directed. It does *not* mean that Congress did not intend the Act to apply to those in appellant's situation. Moreover, ". . . if Congress has made a choice of language which fairly brings a given situation within a statute, it is unimportant that the particular application may not have been contemplated by the legislators." Barr v. United States, 324 U.S. 83, 90, 65 S.Ct. 522, 525, 89 L.Ed. 765 (1945).

Appellant argues that he has done no more than is permitted by the Immigration and Naturalization Service and the Selective Service System when they allow certain doctors, admitted to the United States as immigrants, to depart and apply at an American Consulate for an exchange visitor visa. Later, he suggests, they may regain their immigrant status. Assuming that this be true (and appellant has cited no sources to establish the fact), it has no relevance to this proceeding and, its impropriety, if any, should be the subject of an independent inquiry.

The judgment of the district court will be affirmed.

---

2. 8 U.S.C.A. § 1426 reads in part:
   . . . any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces . . . on the ground that he is an alien . . . shall be permanently ineligible to become a citizen of the United States.